FRANK JACKO vs. THE AMERICAN TUBE AND STAMPING COMPANY.

Third Judicial District, Bridgeport, April Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A factory employee familiar with the location and surroundings of a freight-elevator, which he was accustomed to use at least twice a day, was struck upon the back of his neck and head by the descending car while he was looking down the shaft and calling for the elevator, supposing it to be at the ground floor. *Held* that before thrusting his head into the path of such a moving object upon the mere assumption that it was on the floor below him, the plaintiff employee was bound to make some use of his senses, especially as a casual glance of the eye would have revealed the elevator's whereabouts; and that inasmuch as the evidence failed to disclose the exercise of due care upon his part, the plaintiff was properly nonsuited.

Argued April 14th—decided June 2d, 1916.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in Fairfield County where the plaintiff was nonsuited in a trial to the jury before *Gager, J.*, and from the refusal of the trial court to set aside this judgment he appealed. *No error.*

From the evidence the following facts might reasonably have been found:—

The plaintiff was injured while working in the defendant's shop. The building was three stories in height, each being some twelve to fifteen feet between floors and having windows on the two sides and one end. Each floor was without partitions. A freight platform elevator for the use of the employees in their work ran from the first to the upper floors, and was in use much of the time. The elevator shaft was located against the wall in the middle of the end of the shop which had no windows, and extended out about eleven feet into the shop, and was about seven feet wide. At this point the shop is not well lighted, although there is, in addition to the windows on the three sides, an electric light over the timekeeper's desk, which stands but a few feet from the elevator entrance. The shaft was uninclosed, except on the end next to the wall. On the two upper floors it was guarded on its two sides by a railing four feet to four and a half feet high, and on its front or entrance end by a gate of the same height. The elevator itself was of the uninclosed platform kind, with an iron frame extending up the middle of each side to a point over its center, where the lifting cable was attached. This cable, when the elevator was at the bottom, extended down through the center of the shaft. Another cable, for the operation of the elevator, was located in a corner of the shaft a few inches from the front and entrance gate. There was no call-bell, the one which had originally been installed having long been out of order and unused. The only available means of summoning the elevator-man were by calling down the shaft or by shaking the operating cable. The former was usually employed, especially when the elevator was below the floor at which its presence was desired. It was commonly stationed at the first floor when not in use.

The plaintiff, a young man of more than a year's shop experience, about one half of which was in a shop where there was an elevator, had been employed by the defendant about two months at work on the first floor of the defendant's shop. After the first week of such employment his duties had necessitated his going twice daily to the stock-room, located on the second floor, with a truck to procure working material. He used the elevator going and coming. About two o'clock in the afternoon of the day he was injured, he had gone to the stock-room with the truck, taken on his load and started to return with it. Arriving at the elevator entrance, which was some little distance away from the stock-room, he stopped the truck, stepped to the gate, put his head over it and called down for the elevator, supposing it to be at the ground floor. In fact it was above him, and, descending, it struck him upon the back of his neck and head, forcing them against the gate and causing the injuries for which he brought his suit.

*William W. Bent*, for the appellant (plaintiff).

*Carl Foster*, for the appellee (defendant).

PER CURIAM. The court granted the nonsuit, which it afterward refused to set aside, upon the ground that the plaintiff had failed to offer prima facie proof of either negligence on the part of the defendant or the absence of contributory negligence on the part of the plaintiff. Assuming that there was evidence which the plaintiff was entitled to have submitted to the jury in support of the allegation that the defendant was negligent in not providing a call-bell or other suitable device for summoning the elevator-man, there was such lack of evidence of the plaintiff's exercise of due care that prima facie proof upon that aspect of the case was wanting.

The plaintiff must have been fully aware of the conditions which surrounded the elevator with which he had become familiar by its daily use for substantially two months. The danger inherent in those conditions, whatever they were, and the particular danger to which he was exposed when he was injured, were perfectly obvious. As a person of ordinary intelligence he must have known and comprehended them. It was his duty, in the exercise of ordinary care, to conduct himself accordingly, and to make a reasonable use of his senses in view of the danger. He, as he says, thrust his head into the path of the ascending or descending elevator to call its operator, upon the assumption that it was below him at the ground floor. He was not entitled to put himself in a place of danger upon such an assumption. He had no foundation for it other than that the customary station of the elevator when not in use was there. He knew that its position was not a stationary one, and that its use, which was more than casual, carried it to the other floors of the building. He took not the slightest precaution to see where it was before choosing, between the two available methods of calling it, the one which had the elements of danger in it. A glance of the eye would have told him that it was above him. The floor over his head was the highest point to which it could go. Its path was entirely exposed to view. If it was at the upper story or descending, that fact would be revealed by the most casual look. The absence of the lifting-cable from the shaft would also have disclosed that the elevator was above and not below. A look down the shaft before he reached the gate would have revealed that it was not at the ground floor, for he admitted that, standing a few feet in front of the gate, one could see the elevator platform when it was there.

If the dim light prevented him from seeing clearly

these or any of these indications of the elevator's position, that would furnish him no excuse for not looking and trying to see, and he does not say that he did anything of the sort. As far as appears by the testimony he did not make the slightest effort to observe any of the unmistakable indications of the elevator's position, or to take the least precaution before placing himself in a place of known danger. For aught that appears he acted heedlessly, or upon an assumption, if he took any thought at all, which, under the circumstances, he had no reasonable excuse for making and acting upon.

There is no error.